UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| ROBERT L HARMAN, and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>*v*.<br><br>SOUTHEAST ENERGY CONSULTANTS L.L.C., a Florida company, and VIA RENEWABLES, INC., a Delaware registered corporation,<br><br>*Defendants*. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiff Robert L Harman ("Plaintiff Harman" or "Harman") brings this Class Action Complaint and Demand for Jury Trial against Defendants, Southeast Energy Consultants L.L.C. ("Defendant Southeast Energy" or "Southeast Energy") and Via Renewables, Inc., ("Defendant Via Renewables" or "Via Renewables") to stop the Defendants from violating the Telephone Consumer Protection Act and Florida Telephone Solicitation Act by placing cold calls to telephone numbers using a pre-recorded voice message without consent, in addition to placing calls to clients after they have told the Defendants' employees to stop calling.

The Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff Harman, for this Complaint, allege as follows upon

personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigations conducted by his attorneys.

## PARTIES

1.    Plaintiff Harman is a resident of Bliss, New York.

2.    Defendant Southeast Energy Consultants L.L.C., is a limited liability company registered in Holiday, Florida. Defendant Southeast Energy conducts business throughout this District.

3.    Defendant Via Renewables, Inc., is a corporation registered in Delaware and headquartered in Houston, Texas. Defendant Via Renewables conducts business throughout this District.

## JURISDICTION AND VENUE

4.    This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as certain actions arise under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"). The Court has supplemental jurisdiction over the FTSA claims because they arise from the same calls as the TCPA claim.

5.    This Court has personal jurisdiction over Defendant Southeast Energy since they conduct business in this District and this court has personal jurisdiction

over Defendant Via Renewables since Via Renewables does considerable business in this District.

6.    The venue is proper under 28 U.S.C. § 1391(b) because the solicitations at issue were directed by the Defendants from this District.

## INTRODUCTION

7.    As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

8.    When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

9.    By 2003, due to more powerful robocalling technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

10.    The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

11. Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

12. According to online robocall tracking service "YouMail," 5 billion robocalls were placed in March 2023 alone, at a rate of 161.1 million per day. www.robocallindex.com (last visited April 14, 2023).

13. The FCC also has received an increasing number of complaints about unwanted calls. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

## COMMON ALLEGATIONS

16.     Defendant Southeast Energy operates energy deregulation call centers based in Holiday, Florida.[3]

17.     Defendant Southeast Energy hires and trains its employees to place unsolicited telemarketing calls to consumers offering cheaper gas and energy rates, as per Plaintiff's experience.

18.     Defendant Via Renewables operates throughout 19 states, including New York, providing gas and electricity to consumers through a number of its brands including Verde Energy, Spark Energy, and Major Energy.[4]

19.     Defendant Southeast Energy operates as a third-party sales vendor for Defendant Via Renewables, generating new business through telemarketing.

20.     Defendant Southeast Energy's employees place calls to consumers using the name Southeast Energy and then disclose that they are working on behalf of Defendant Via Renewables' brands including Spark Energy and Verde Energy. For example, consumers have reported calls from Defendant Southeast Energy where the employees referenced Defendant Via Renewables' brands, such as Spark Energy and Major Energy.

---

[3] https://www.linkedin.com/company/southeast-energy-consultants-llc/about/
[4] https://viarenewables.com/wp-content/uploads/2022/04/Annual-Report-2021-Posted.pdf



OfclyGoodenough Regular
1 16 Jan
+1 (855) 276-9372
TOLL FREE CALL
(855) 276-9372 is a number serviced by
"Thank you for calling SEC (South Energy Consultants). Please hold for the next available agent."
0:06
Hello? I need to speak to the person handling the electric bill. Can you hear me? Yeah, I can hear you. Can you hear me? Hello?
Scammer will ask for whoever's holding the electric bill, calling customers on behalf of "Spark Energy, L.P.," a fraudulent electric company located at:
• 12140 Wickchester Ln, Suites 10 & 100, Houston, TX 77079-1211
Nannette
10 Mar 2023
0
States that they are from Major Energy and person's name was Mary Banaga phone number 8552769372 and 8886256760
[5] [6]

21. Defendant Via Renewables owns and operates the brands Spark Energy, Major Energy and Verde Energy USA:

[5] https://scammer.info/t/spark-energy-l-p-utility-scammers-dba-south-energy-consultants-major-energy/118552

[6] https://whocallsme.com/Phone-Number.aspx/8552769372

**Our Operations**

As of December 31, 2021, we operated in 100 utility service territories across 19 states and the District of Columbia and had approximately 408,000 residential customer equivalents ("RCEs"). An RCE is an industry standard measure of natural gas or electricity usage with each RCE representing annual consumption of 100 MMBtu of natural gas or 10 MWh of electricity. We serve natural gas customers in fifteen states (Arizona, California, Colorado, Connecticut, Florida, Illinois, Indiana, Maryland, Massachusetts, Michigan, Nevada, New Jersey, New York, Ohio and Pennsylvania) and electricity customers in twelve states (Connecticut, Delaware, Illinois, Maine, Maryland, Massachusetts, New Hampshire, New Jersey, New York, Ohio, Pennsylvania and Texas) and the District of Columbia using seven brands (Electricity Maine, Electricity N.H., Major Energy, Provider Power Mass, Respond Power, Spark Energy, and Verde Energy). [7]

**Defendant Southeast Energy Places Unsolicited Telemarketing Calls Using an Autodialer and Pre-Recorded Calls, and Southeast Energy Fails to Maintain a Sufficient Internal Do Not Call List**

22. Defendant Southeast Energy places cold calls to consumers on behalf of Defendant Via Renewables.

23. Defendant Southeast Energy's past and current employees have posted about the cold calls they had to place to generate business, including:

**Jason LeBlanc**
--

**Customer Service Representative**
SOUTHEAST ENERGY CONSULTANTS, LLC · Part-time
Mar 2021 - May 2022 · 1 yr 3 mos
Holiday, Florida, United States

Outbound Call agent cold-calling soliciting gas and electric energy to predetermined customers in select areas with the goal of selling and/or renewing services rendered by SEC.

**Skills:** Customer Service · Clear Communications · Data Entry · Interpersonal Skills · Computer Literacy [8]

---

[7] https://viarenewables.com/wp-content/uploads/2022/04/Annual-Report-2021-Posted.pdf
[8] https://www.linkedin.com/in/jason-leblanc-5b2a33209/



Lovely Mae Acenas Edizo
Telemarketer | Appointment Setter | Data Entry | Team Leader | Virtual Assistant

**Telemarketing Specialist**
SOUTHEAST ENERGY CONSULTANTS, LLC · Part-time
Aug 2022 - Present · 9 mos
2328 US-19, Holiday, FL 34691, United States

**Skills:** Business-to-Consumer(B2C) · Business-to-Business (B2B) · English · Cold Calling · Sales [9]

**Very bad company to work.**
Telemarketer (Former Employee) - Pinellas Park, FL - December 16, 2019

There script is horrible and very hard to get any sales with cold calling. The management is very rude and they dont train well and just throw u on the phones and if u cant get sales they send u home. [10]

24. Defendant Southeast Energy places unsolicited pre-recorded calls to consumers, in violation of the TCPA.

25. Numerous consumers have posted complaints online about pre-recorded calls that they received from Defendant Southeast Energy, as per Plaintiff's experience, including:

[9] https://www.linkedin.com/in/lovely-mae-acenas-edizo-791a831b4/?originalSubdomain=ph
[10] https://www.indeed.com/cmp/Southeast-Energy-Consultants/reviews



[11]

26. Defendant Southeast Energy also places unsolicited calls to consumers using an autodialer, in violation of the FTSA even though they make these calls from Florida.

27. Defendant Southeast Energy is open about its use of an autodialer. On its employee recruitment page, it states:

[11] https://callfilter.app/18552769372



**Perks**

Two paid 15 minute breaks. State of the art dialer system. Half hour lunch. Potential growth. Casual dress environment. Laid back environment. Professional facility. Payday every Monday. [12]

28. To make matters worse, Defendant Southeast Energy continues to place calls to consumers even after its employees have been instructed to stop calling, as per a complaint posted by former employees:

**Shen Valor**
1 review
★☆☆☆☆ 2 years ago

**Critical:** Professionalism, Quality, Value

While it might not specifically be this location, my experience working under SEC was awful. You have to meet a quota, something they dont tell you about until you're about to be fired for a week later, what they sell sounds like a scam, not everyone thats put on a DNC list is put on there. I've had called the same person more than twice before. Not recommended at all.

5 [13]

[12] http://energysavingsprogram.org/fun-stuff/
[13] https://www.google.com/search?q=%22southeast+energy+consultants

1.0

**Staff is unprofessional**

CSR - Customer Service Representative (Former Employee) - Holiday, FL - March 11, 2020

The managers that work here are so unprofessional and they have their agents call the same people on the DNC list over and over. That makes a lot of sense right?

Was this review helpful?

Yes 2 No 1 Report Share

[14]

29. A number of consumers have posted complaints directly to the Better Business Bureau page for Defendant Southeast Energy, including complaints about receiving calls despite asking for the calls to stop, such as:

- "I keep receiving phone calls from the following business at 908-224-1526. They keep leaving voice mails and have another callback number of 1-877-503-6374. They have used different numbers and have called multiple times a day. ***Tried to get my number removed but they were very rude, hung the phone up on me and the mangers were no help either.*** Have already filed a complaint with the FTC. Want them to stop calling me and leave me alone. Not interested in the service they are providing."[15] (emphasis added)
- "This company persists with unwanted telephone calls to me, several times per week for the last several months. Today, 3/15/2021, the company made it's 4th unsolicited call to me in one week, ***despite my repeated requests that they not do so***. When I politely advised the individual on the line that would like to have my number removed, he went into some comedy bit, pretending like I had called him."[16] (emphasis added)
- "Every day for the last month i get at least 1 call a day or more from *********** telling me my service rates for my electric and gas need

[14] https://www.indeed.com/cmp/Southeast-Energy-Consultants/reviews
[15] https://www.bbb.org/us/fl/holiday/profile/energy-management-consultant/southeast-energy-consultants-llc-0653-90100999/complaints
[16] Id.

to be 'locked' in before they raise it and to call ************.....pg&e is my electric provider and does not (like any other electric company) 'lock' in rates just by having you call them. Just stupid harrassing phone calls all the time. This is so infuriating, im thinking of opening a small court case im talking with one of my lawyer friends right now whom suggested i post on BBB as well..."[17]

- "I receive multiple calls daily from this company ***after telling them I am not interested in their service.*** The calls are annoying and harassing due to the volume and frequency of calls made to my phone."[18] (emphasis added)
- "They keep calling me 4 or 5 times a day from different numbers that have my same area code. I have blocked all the numbers but they keep calling me. I have no need for this service because i dont pay for electricity."[19]
- "This business will not stop harassing/contacting me, multiple calls and voicemails every single day, week after week. I have blocked over ten contact numbers from this business and they still continue to use new phone numbers to call day after day. I am NOT interested in this service what's so ever and just want the calls and voicemails to stop!"[20]
- "This business has been harassing me with numerous calls. ***When I've asked to be added to a do not call list they have been rude, extremely aggressive, taunting, hung up, and continue to call.*** One even threatened to keep calling me every day. I would never do business with an organization that allows there employees to treat anyone, customer or not, this way."[21] (emphasis added)

---

[17] Id.
[18] Id.
[19] Id.
[20] Id.
[21] Id.

**Defendant Via Renewables Is Vicariously Liable for the Unlawful Telemarketing Defendant Southeast Energy Engages in to Generate Business On its Behalf**

30.     Defendant Via Renewables is aware of, consented to, and/or ratified Southeast Energy's making unsolicited cold calls to consumers to generate business and sign up customers for Defendant Via Renewable's brands.

31.     Upon information and belief, Defendant Via Renewables pays Southeast Energy for each new customer who signs up for one of Via Renewables' brands.

32.     Based on the foregoing, Southeast Energy was authorized by Via Renewables to act on Via Renewables' behalf with respect to the telemarketing phone calls to consumers described above.

33.     Southeast Energy had apparent authority to act on Via Renewables' behalf with respect to the telemarketing phone calls to consumers described above and to sign up customers to one of Via Renewables' brands based on the customer's location.

34.     Via Renewables ratified Southeast Energy's making of the telemarketing calls described above.  Indeed, Via Renewables knew that Southeast Energy places outbound telemarketing calls to consumers nationwide on behalf of Via Renewables, without prior express written consent, or otherwise had knowledge

of facts that would have led a reasonable person to investigate further, and yet Via Renewables ratified Southeast Energy's conduct without further investigation.

35. In addition and/or in the alternative, Via Renewables was negligent in supervising Southeast Energy's making of the telemarketing calls described above, or recklessly turned a blind eye as it benefited financialy from their unsolicited calling campaigns. Accordingly, Via Renewables is responsible for Southeast Energy's making of the telemarketing calls described above.

36. A cursory look online by Via Renewables would have shown that Defendant Southeast Energy has a disturbing history of unlawful telemarketing. The Google reviews page[22] for Southeast Energy and the Better Business Bureau page[23] for Southeast Energy contain numerous reports about unlawful telemarketing, some of which has been described above going back at least 4 years.

37. Numerous consumers have complained publicly that "This is a harassing company, they call several times a day, claiming they will put you on the do not call yet I get tons of different numbers that when I call back all lead to them."[24]

38. In fact, Defendant Via Renewables is fully aware of the risks inherent in hiring a third-party such as Southeast Energy to place telemarketing calls on its

---

[22] https://www.google.com/search?q=%22southeast+energy+consultants

[23] https://www.bbb.org/us/fl/holiday/profile/energy-management-consultant/southeast-energy-consultants-llc-0653-90100999/complaints

[24] https://www.google.com/search?q=southeast+energy+consultants&pws=0&gl=us&gws_rd=cr#gws_rd=cr&lrd=0x88c2f2a3d50672f9:0x2b9a0017a5920f9b,1,,,,

behalf. In its 2021 Annual Report, Via Renewables discloses its exposure to being subject to liability for actions that arise from its third party telemarketing vendors, even going so far as to warn investors that it could become involved in legal and regulatory proceedings as a result of this telemarketing:

> Our outbound telemarketing efforts and use of mobile messaging to communicate with our customers, which has increased in recent years, subjects us to regulation under the TCPA. Over the last several years, companies have been subject to significant liabilities as a result of violations of the TCPA, including penalties, fines and damages under class action lawsuits. Our failure to effectively monitor and comply with our activities that are subject to the TCPA could result in significant penalties and the adverse effects of having to defend and ultimately suffer liability in a class action lawsuit related to such non-compliance.
>
> We are also subject to liability under the TCPA for actions of our third party vendors who are engaging in outbound telemarketing efforts on our behalf. The issue of vicarious liability for the actions of third parties in violation of the TCPA remains unclear and has been the subject of conflicting precedent in the federal appellate courts. There can be no assurance that we may be subject to significant damages as a result of a class action lawsuit for actions of our vendors that we may not be able to control.
>
> ***We are, and in the future may become, involved in legal and regulatory proceedings and, as a result, may incur substantial costs.***
>
> We are subject to lawsuits, claims and regulatory proceedings arising in the ordinary course of our business from time to time, including several purported class action lawsuits involving sales practices, telemarketing and TCPA claims, as well as contract disclosure claims and breach of contract claims. These are in various stages and are subject to substantial uncertainties concerning the outcome.
>
> A negative outcome for any of these matters could result in significant costs, may divert management's attention from other business issues or harm our reputation with customers. [25]

39. The Federal Communication Commission has instructed that corporations such as Via Renewables may not avoid liability by having their telemarketing outsourced:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as if often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer

[25] https://viarenewables.com/wp-content/uploads/2022/04/Annual-Report-2021-Posted.pdf

> that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC notes, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, at ¶ 37 (201) ("FCC 2013 Ruling") (citations omitted).

40. As could be expected, Defendant Via Renewables and its brands have had to contend with numerous TCPA related cases such as Metzler v. National Gas & Electric, LLC[26]. In fact, Verde Energy, a brand owned/operated by Defendant Via Renewables settled a $5 million TCPA lawsuit in 2022 alleging unsolicited pre-recorded calls.[27]

41. Defendant Via Renewables is liable for the telemarketing that is conducted on its behalf by companies such as Southeast Energy and it has a responsibility to ensure that Southeast Energy is following the laws defined by the TCPA and FTSA.

42. In response to these unsolicited calls, the Plaintiff brings this case seeking injunctive relief requiring the Defendants to cease from violating the

[26] Case 4:2022cv00005

[27] https://topclassactions.com/lawsuit-settlements/closed-settlements/verde-energy-tcpa-class-action-settlement/

Telephone Consumer Protection Act by placing unsolicited pre-recorded calls and failing to maintain adequate policies and procedures for maintaining and honoring do not contact requests, from violating the Florida Telephone Solicitation Act, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF HARMAN'S ALLEGATIONS

43.     Plaintiff Harman is the subscriber and the sole user of the cell phone number ending with 9134.

44.     Plaintiff Harman registered his cell phone on the DNC on March 15, 2023 and he uses it as one would use a residential landline.

45.     Plaintiff Harman started receiving unsolicited calls from the Defendants at the beginning of March, 2023 to his cell phone.

46.     Plaintiff Harman received an unsolicited call from the Defendants to his cell phone, from 315-303-2139 on March 3, 2023. The call was not answered but a pre-recorded voicemail was left on Plaintiff's cell phone asking him to call Defendant Southeast Energy back at 855-276-9372.

47.     Plaintiff Harman called 855-276-9372 and he spoke to an employee. Plaintiff specifically told the employee that he was not interested and said he wants the calls to stop.

48.     Despite Plaintiff Harman's request for the calls to stop, Defendant Southeast Energy continued placing pre-recorded voice calls to his cell phone number.

49.     Plaintiff Harman received an unsolicited call from the Defendants to his cell phone, from 315-561-2204 on March 6, 2023. The call was not answered but a pre-recorded voicemail was left on Plaintiff's cell phone asking him to call Defendant Southeast Energy back at 855-276-9372.

50.     The voicemail that Plaintiff received on March 6, 2023 was identical to the voicemail he received on March 3, 2023:



51.     Plaintiff Harman received a 3rd unsolicited call from the Defendants to his cell phone, from 315-215-6968 on March 7, 2023. The call was not answered but a pre-recorded voicemail was left on Plaintiff's cell phone asking him to call Defendant Southeast Energy back at 855-276-9372.

52.     Plaintiff Harman received a 4th unsolicited call from the Defendants to his cell phone, from 315-215-6968 on March 8, 2023. The call was not answered but a pre-recorded voicemail was left on Plaintiff's cell phone asking him to call Defendant Southeast Energy back at 855-276-9372.

53.     Plaintiff Harman received a 5th unsolicited call from the Defendants to his cell phone, from 315-215-6968 on March 9, 2023. The call was not answered but a pre-recorded voicemail was left on Plaintiff's cell phone asking him to call Defendant Southeast Energy back at 855-276-9372:

> "I'm calling you with an urgent message regarding your electric and gas bills. Return my call at 855-276-9372 to avoid any upcoming rate increases."

54.     Plaintiff Harman received a 6th unsolicited call from the Defendants to his cell phone, from 315-239-0079 on March 11, 2023. The call was not answered but a pre-recorded voicemail was left on Plaintiff's cell phone asking him to call Defendant Southeast Energy back at 855-276-9372:

> "I am calling now with an urgent message regarding your electric and gas bills. Return my call at 855-276-9372 to avoid any upcoming rate increases."

55.     Plaintiff Harman received a 7th unsolicited call from the Defendants to his cell phone, from 315-239-0079 on March 13, 2023. The call was not answered but a pre-recorded voicemail was left on Plaintiff's cell phone asking him to call Defendant Southeast Energy back at 855-276-9372:

"I'm calling you with an urgent message regarding your electric and gas bills. Return my call at 855-276-9372 to avoid any upcoming rate increases."

56.     Plaintiff Harman made 2 additional stop requests by calling 855-276-9372 during the first 2 weeks of March, 2023. In both of the calls, Plaintiff specifically asked the employees to stop calling. In the most recent stop request call, a female employee answered, "Absolutely not" to Plaintiff's stop request.

57.     Plaintiff Harman received additional unsolicited calls to his cell phone from the Defendants after March 13, 2023. The calls were not answered, and no voicemails were left.

58.     Plaintiff Harman believed all of the voicemails were pre-recorded because all of the voicemails begin with a clear pause, they are all generic and because they sound scripted. In addition, Plaintiff received voicemails that were identical to each other, such as:



59. The unauthorized solicitations that Plaintiff Harman received from the Defendants, as alleged herein, have harmed Plaintiff Harman in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phones' battery) and the consumption of memory on the phone.

60. In addition, Plaintiff Harman spent wasted time calling Defendant Southeast Energy on 3 separate occasions in order to stop the calls.

61. Seeking redress for these injuries, Plaintiff Harman, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA and FTSA.

## CLASS ALLEGATIONS

62. Plaintiff Harman brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) the Defendant called on their cellular telephone number (2) using an artificial or pre-recorded voice.

> **Internal Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) the Defendants called more than one time, (2) within any 12-month period (3) for substantially the same reason Defendants called Plaintiff, (4) including at least once after the person requested that they stop calling and/or sending text messages.

> **<u>Autodial Class:</u>** All persons, who, on or after July 1, 2021, (1) received a telephonic sales call regarding Defendant SEO's goods and/or services made from or into Florida, (2) using the same equipment or type of equipment utilized to call the Plaintiff.

63. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendants have been fully and finally adjudicated and/or released. Plaintiff Harman anticipates the need to amend the Class definitions following appropriate discovery.

64. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and the Plaintiff is a member of the Classes because she received text messages as part of the same telemarketing campaign resulting in text messages sent to other Class members.

65. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes.

Common questions for the Classes include, but are not necessarily limited to the following:

(a)     whether Defendants' conduct violated the TCPA;

(b)     whether the Defendants placed pre-recorded voice message calls to Plaintiff and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

(c)     whether either of the Defendants or an agent called on behalf of either of the Defendants engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d)     whether Defendants' conduct violated the FTSA;

(e)     whether members of the Classes are entitled to treble damages based on the willfulness of Defendants' conduct.

66.     **Adequate Representation**: Plaintiff Harman will fairly and adequately represent and protect the interests of the Classes and have retained counsel competent and experienced in class actions. Plaintiff Harman has no interests antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff. Plaintiff Harman, and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes and have the financial resources

to do so. Neither Plaintiff Harman, nor his counsel have any interest adverse to the Classes.

67. **Appropriateness**: This class action is also appropriate for certification because Defendants acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Harman. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Harman and the Pre-recorded No Consent Class)**

68. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

69.     Defendant Southeast Energy transmitted unwanted telephone calls to Plaintiff Harman and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message on behalf of Defendant Via Renewables.

70.     These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff and the other members of the Pre-recorded No Consent Class.

71.     The Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' conduct, Plaintiff and the other members of the Pre-recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**SECOND CAUSE OF ACTION**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Harman and the Internal Do Not Call Class)**

72.     Plaintiff repeats and realleges paragraphs 1 through 67 of this Complaint and incorporates them by reference herein.

73.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is

> made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

74. Defendants placed calls to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendants to initiate telemarketing calls.

75. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

76. The Defendants have, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendants' conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

**THIRD CAUSE OF ACTION**
**Violation of the Florida Telephone Solicitation Act,**
**(Fla. Stat. § 501.059)**

**(On Behalf of Plaintiff Harman and the Autodial Class)**

77.    Plaintiff repeats and realleges paragraphs 1 through 67 of this Complaint and incorporates them by reference herein.

78.    Plaintiff brings this claim individually and on behalf of the Autodial Class Members against the Defendants.

79.    It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

80.    A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

81.    Defendants failed to secure prior express written consent from Plaintiff and members of the Autodial Class.

82.    In violation of the FTSA, Defendants made and/or knowingly allowed telephonic sales calls to be made to Plaintiff and the Autodial Class members without Plaintiff's and the Class members' prior express written consent.

83.    Defendants made and/or knowingly allowed the telephonic sales calls to Plaintiff and the Class members to be made utilizing an automated system for the selection or dialing of telephone numbers and/or the playing of a recorded message when a connection was completed.

84.    As a result of Defendants' conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *Id.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Harman, individually and on behalf of the Classes, pray for the following relief:

a.) An order certifying this case as a class action on behalf of the Classes as defined  above; appointing Plaintiff Harman as the representative of the Classes; and appointing his attorneys as Class Counsel;

b.) An award of actual and/or statutory damages and costs;

c.) An order declaring that Defendants' actions, as set out above, violate the TCPA and FTSA;

d.) An injunction requiring the Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e.) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Harman requests a jury trial.

**ROBERT L HARMAN**, individually, and on behalf of all others similarly situated,

DATED this 2nd day of May, 2023.

By: /s/ Stefan Coleman

Stefan Coleman
COLEMAN PLLC
66 West Flagler Sreet
Suite 900
Miami, FL 33130
(877) 333-9427
law@stefancoleman.com

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Classes*

**Lead Counsel for Plaintiff and the putative Classes*